Dear Mr. Faulk:
You have requested an Attorney General's Opinion regarding House Bill No. 879 of the 2005 Regular Legislative Session, which became Act No. 468 ("Act 468"), effective July 11, 2005 upon signature of the Governor. Act 468 enacted LSA-R.S.33:4574.1.1(O), relative to the levy of an additional occupancy tax of three percent, by tourist commissions in parishes "with a population of not less that fifty-three thousand seven hundred and not more that fifty-seven thousand seven hundred persons according to the most recent federal decennial census". In accordance with Act 468, two-thirds of the proceeds of the additional taxes "shall be dedicated for youth athletic programs throughout the parish and shall be used to purchase insurance, uniforms, and athletic equipment and supplies." A complete copy of Act 468 is attached hereto for reference. It is our understanding that in accordance with the 2000 federal decennial census, Vermilion Parish has a population of 53, 807.
With respect to Act 468, you have posed the following issues for our review.
 "A) The Constitutionality of the bill. Can funds directed for tourism promotion be used for paying recreational program fees? In addition, the organizations proposed to be aided are not municipal or parish operated programs. But are private/non-profit organizations, and in some cases are private/for profit operations, all of which are traditionally not eligible to receive public funds. If these organizations are deemed eligible, are there any restrictions to them receiving public funds? Please note that the funds are not to be used to promote the organizations, but are to be pay registration fees or insurance cost for participants, which the Police Jury feels are not eligible costs to be paid by public funds."
This office has long recognized the caution which must be exercised in the expenditure of public funds. Accordingly, we are compelled to examine the issues raised by these questions in light of the provisions of La. Const. (1974) Art. VII, Sec. 14,
which contains the constitutional standard for the lawful use of public funds and property. This constitutional provision generally prohibits the state and its political subdivisions from loaning, pledging or donating public funds, assets or property to or for any person, association or corporation, public or private. However, Section (B) thereof authorizes the use of public funds for "programs of social welfare for the aid and support of the needy", and Section (C) authorizes the state and its political subdivisions or political corporations to engage in cooperative endeavors for public purposes.
We note that in accordance with City of Port Allen v.Louisiana Municipal Risk, 439 So.2d 399 (La. 1983), the Supreme Court stated that Art. VII, Sec. 14 is violated "whenever the state or a political subdivision seeks to give up something of value when it is under no obligation to do so . . ." The Court further stated:
 ". . . even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations or to individuals merely for a public purpose."
Please be advised that in the opinion of this office, Act 468 is not, on its face, violative of Article VII, Sect. 14 or otherwise unconstitutional. Of course, care must be taken to insure that Act 468 is not implemented in an unconstitutional manner.
With respect to the use of the funds in question for recreational purposes, we are aware that tourist commissions are generally in the business of promoting tourism, and that occupancy taxes are generally collected for that purpose. However, we are not aware of, nor did our research reveal, any provision of law which would prohibit the legislature from authorizing the use of occupancy taxes, by tourist commissions, for purposes other than tourism.
It is our opinion that Act 468 does not authorize the use of the funds in question for the payment of `recreational program fees', `registration fees" or any other expenditure to or on behalf of specific individuals or private organizations. If Act 468 did do so, or if the funds generated by the taxes authorized by the Act were to be utilized for individuals or private entities, Art. VII, Sec. 14 would be violated.[1]
As we read Act 468, no funds are to be transferred to or on behalf of any private organizations, non-profit or otherwise. Rather, the Act calls upon the tourist commission to "provide athletic programs for the youth of the parish" and authorizes the tourist commission to enter into cooperative endeavors with the parish governing authority and "any municipality with a population of not less than six thousand and not more than twelve thousand persons" (you have advised the undersigned that the only municipality in Vermilion Parish that meets this description is the city of Abbeville), but only "as appropriate, for such purposes". In our opinion the tourist commission can establish its own "athletic programs for the youth of the parish", or it can enter into a cooperative endeavor with the Parish, and/or with the city of Abbeville, to establish parish-wide athletic programs on the tourist commission's behalf. In either event, the funds in question can only be used, in accordance with Act 468, "to purchase insurance, uniforms, and athletic equipment and supplies." LSA-R.S. 33:4574.1.1.O(2)(a).
 "B) When is the tax to be implemented and by whom?"
In accordance with the provisions of LSA-R.S.33:4574.1.1.O.(1)(a), as enacted by Act 468, the ". . tourist commission . . . shall levy and collect an additional tax of three percent . . ." Accordingly, it is our opinion that the tourist commission is to implement the tax. With regard to when the tax should be levied, it is our opinion that the tax should be levied as soon as is possible and practical. In this regard we note that LSA-R.S. 33:4574.1.1.O(3) provides that if the tax is not levied within sixty days after the effective date of Act 468, "the district attorney for the parish shall provoke the issuance of a writ of mandamus to compel the appropriate officials to act as provided by law."[2]
 "C) The intent of the legislation calls for the revenues derived to be split according to participation between the city of Abbeville and the Police Jury. What about the other municipalities? Does their share come thru to Police Jury allocation? Are the participants from the municipalities to be included in the Parish numbers? In counting a child's participation, does each child get counted for each sport they participate in (many children play soccer, basketball, and baseball)? Do they get recognized in all 3 sports, or just once as a participant?"
We assume that these questions refer to the following sentence, contained in LSA-R.S. 33:4574.1.1.O(2)(a):
 "The proceeds of the tax shall be distributed, based upon the number of youth participating in athletic programs, on a per capita basis."
As previously noted, it is our opinion that Act 468 requires the tourist commission to "provide athletic programs for the youth of the parish", or to enter into an agreement with the Parish of Vermillion or the City of Abbeville in order that they might establish the parish athletic program on the commission's behalf. Please note that we interpret Act 468 as requiring the establishment of a parish-wide athletic program, i.e. one available to all youth of the parish, whether or not they live in municipalities.
Furthermore, we note that Act 468 does not contain any language indicating that the tax revenues in question should be "split" or are required to be "split" between the City of Abbeville and the Parish of Vermilion. To the contrary, as previously noted, it is our opinion that the tourist commission can establish its own athletic programs; it is not required to contract with the Parish of Vermilion or the City of Abbeville, except "as appropriate, for such purposes".
With regard to the above-quoted statutory requirement that funds must be distributed on a per capita basis, it is our opinion that a reasonable interpretation would require funding to be distributed among the various parish-wide programs the commission chooses to establish (if the commission chooses to establish more than one athletic program) based upon the number of youth participating in each program. Thus, for example, if three separate parish-wide programs are established, one for baseball, one for basketball and one for soccer, each program should be funded based upon the number of youth participating in each sport. Additionally, if the commission instead decides to divide the parish geographically, and fund separate programs in different parts of the parish, for example a program for youth in the West and a program for youth in the east, the two geographic programs must be funded on the basis of the number of youth participating in each geographic area. We caution the commission that if it does decide to establish separate geographic programs, care should be taken to ensure that all youth of the parish are given equal opportunities to participate in athletics.
It is our further opinion that Act 468 cannot reasonably be interpreted as requiring funding to be distributed only on the basis of each individual child that participates in athletics. Rather, the number of youth participating in each sport and program should be considered. Thus, if a child participates in three sports or programs, he should be counted as participating in each one.
 "D) How are these funds to be allocated? Are they reimbursable? Are the associations subject to audit because of the public funds? Is the Tourist Commission responsible for monitoring, or is the City of Abbeville and Police Jury?"
In light of our opinion that the funds in question are not distributable for the benefit of private associations or organizations, it appears that our need to address these questions is obviated.
In addressing the issues raised by your request, we have been guided by the following rules of statutory construction: Legislation is a solemn expression of legislative will. LSA-C.C. Art. 2. The words of a law must be given their generally prevailing meaning.
La. C.C. Art. 11. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. LSA-R.S. 1:3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. Art 10. A statute should be given a construction according to fair import of its words taken in their usual sense, in connection with the context, and with reference to the purposes of the provisions. State v. Truby, 29 So.2d 758
(La. 1947). The word shall is mandatory. LSA-R.S. 1:3. In determining the intent of a statute, the interpretation may be availed of to restrict but not to enlarge the enactment. Stateex rel. Noe v. Knop, 190 So. 135 (La.App. 1939).
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
CHARLES C. FOTI, JR. Attorney General
BY:___________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
[1] In our opinion, the funds in question could only be utilized on behalf of individuals or specific entities pursuant to a program for the aid and support of the needy, in accordance with La. Const. Art. VII, Sec. 14(C).
[2] No opinion has been requested, nor is one given, with respect to the duty of the District Attorney to provoke a mandamus action.